NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
## for the
## DISTRICT OF MASSACHUSETTS

```
=======================================
                                        *
In Re:                                  *
                                        *  Chapter 13
    Michael J. & Ellen M. DePaolis,     *  Case No. 05-23784-WCH
                                        *
                    Debtors             *
                                        *
=======================================
```

## Decision on Objection to Claim of Saugus Federal Credit Union

I. Introduction

The matter before the Court is the objection of the Debtors, Michael J. and Ellen M. DePaolis (the "Debtors") to the claim of Saugus Federal Credit Union ("Saugus"). The Debtors argue that Saugus can no longer pursue an unsecured claim because the effect of the discharge that they received in a prior Chapter 7 was to discharge the undersecured portions of Saugus' secured claims in the three vehicles that they listed in that case. Saugus opposed the objection and argued that the Debtors redeemed the vehicles in their Chapter 7, breached the redemption

agreement and now must pay the deficiency based upon the redemption value. After oral argument I took the matter under advisement. For the reasons set forth below, I will enter an order sustaining the objection.

II. Background

The facts necessary to decide this matter are not in dispute. In order to resolve the controversy, however, I must consider the facts of the Debtors' prior Chapter 7 case. I may take judicial notice of those pleadings.[1]

The Debtors filed for relief under Chapter 7 on March 17, 2005.[2] On Schedules A and B of their petition, they listed their home and two vehicles, a 2002 Cadillac and a 2003 Infinity. In Schedule D, they listed Saugus as the secured creditor on these three assets. In their Statement of Intention (the "Statement"), the Debtors represented under the column for redeemed property that they would retain the three assets "and pay pursuant to original contract."[3]

On May 6, 2005, Saugus filed four motions for relief. Three related to the three assets listed above and one related to a 1999 Chevrolet Van which the

---

[1] *In re Hyde*, 334 B.R. 506, 508-9 n. 2 (Bankr. D. Mass. 2005).

[2] *In re DePaolis,* Case No. 05-11974-RS ("Case I").

[3] In the form entitled "Chapter 7 Individual Debtor's Statement of Intention", if a debtor intends to retain property which secures consumer debt, the debtor must list whether the property is exempt, whether it will be redeemed or whether the debt will be reaffirmed.

2

Debtors had not listed.[4] As for the latter asset, Saugus sought relief for a number of reasons including that the Debtors had not listed the asset and had not filed a Statement of Intention regarding the asset. With respect to the three listed assets, Saugus sought relief, in part, because the Debtors had failed to make a proper election pursuant to 11 U.S.C. § 521(a)(2).

On June 1, 2005, Judge Somma entered an order granting the Debtors' motion to amend Schedules B and C to add the van and claim an exemption in the vehicle pursuant to Mass. Gen. Laws ch. 235, § 34(16).[5] On May 20, 2005, Judge Somma entered orders granting the four motions for relief. On June 30, 2005, the Debtors received their discharge in Case I.

On October 15, 2005, the Debtors filed for relief under Chapter 13 ("Case II"). In Schedule B, the Debtors listed all three vehicles. The Debtors did not claim an exemption in the vehicles. In Schedule D, the Debtors listed the three vehicles as being subject to the full amount of the claims of Saugus and represented that a portion of each claim was unsecured. In Schedule F, the Debtors did not list Saugus as holding unsecured claims. In the Chapter 13 plan, the Debtors proposed to pay Saugus the full amount of its claim on each vehicle outside of the plan.

In December of 2005, Saugus sought relief from stay for the three vehicles on

---

[4]When the Debtors listed the van, they disclosed that it had 86,000 miles.

[5]That statute permits an exemption in "an automobile necessary for personal transportation or to secure or maintain employment." Mass. Gen. Laws ch. 235, § 34(16).

3

the sole ground that the Debtors had failed to make payments on the loan agreements. In February of 2006, I entered an order confirming the Chapter 13 plan and in March I entered an order granting Saugus' relief from stay motion. In June of 2006, the Debtors filed an amended plan which made no provisions for payment to Saugus for the three automobiles. In their motion to approve the amended plan, the Debtors explained that they have surrendered the vehicles. Their motion to amend remains pending.

The Debtors have also filed an objection to the proof of claim which Saugus filed for $53,203.47. The Debtors explained that because they have surrendered the vehicles and obtained a Chapter 7 discharge, they are no longer liable for the unsecured claim. Saugus responded with a vigorous objection.

Saugus began its response with a recitation of the facts from the Chapter 7. It represented that because the Debtors had filed the Statement in which they said they were retaining the automobiles and making payments pursuant to the underlying contract, Saugus took no further steps to collect on its debt. After it received relief from stay in Case II, Saugus represented that it gave notice to the Debtors of their right to redeem and sold the vehicles after the Debtors failed to make this election. Saugus argued that the effect of the forgoing is that Debtors must pay the difference between what Saugus received from the sale and the contract price minus any payment.

Saugus explained that pursuant to *Bank of Boston v. Burr (In re Burr)*, 160

4

F.3d 843 (1st Cir. 1998),[6] a debtor must surrender, reaffirm or redeem property that is subject to a consumer debt. Saugus argued that the Debtors clearly chose the latter option based upon the Statement, the fact that Saugus accepted some payments post-petition and the Debtors' representations about Saugus' claim in the schedules and plan in Case II. Saugus asserted that under applicable case law, it was entitled to receive redemption payments over time.[7] Because the Debtors have violated the Statement by failing to make payments, Saugus argued, the Debtors are estopped from changing their option under 11 U.S.C. § 521(a)(2) and instead must pay Saugus the amount set forth in its proof of claim.

III. Analysis

Pursuant to 11 U.S.C. § 502(a), a "claim or interest, proof of which is filed under section 501 of this title, is allowed, unless a party in interest . . . objects." "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). "The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence . . .

---

[6] In that case, the First Circuit ruled that a debtor must either redeem, reaffirm or surrender property of the estate that secures a consumer debt pursuant to 11 U.S.C. § 521(a)(2)(A). The court rejected a fourth alternative which permitted debtors to retain collateral and make payments pursuant to the terms of the underlying contract. In deciding the matter, the court recognized the split of authority with respect to the fourth alternative. 160 F.3d at 845.

[7] In support it cites to *General Motors Acceptance Corp. v. Bell (In re Bell)*, 700 F.2d 1053 (6th Cir. 1983).

Once the trustee manages the initial burden of producing substantial evidence, however, the ultimate risk of nonpersuasion as to the allowability of the claim resides with the party asserting the claim." *In re Hemingway Transport Inc.*, 993 F.2d 915, 925 (1st Cir. 1993), *cert. denied*, 510 U.S. 914 (1993). The issue before me, therefore, is whether the Debtors have presented substantial evidence to show that the parties did not enter into a redemption agreement during Case I and, if so, whether Saugus can overcome that evidence.[8]

In support of its objection, the Debtor contends that during Case I, the parties never came to an agreement with respect to the Debtors' obligations under §521(a)(2)(A). They assert that no such agreement exists. Saugus claims that it relied on the Statement and installment payments as evidence of the redemption agreement. It claims that the Debtors' representations in the Chapter 13 reinforced this perception.

In this circuit, prior to BAPCPA, a debtor must elect to either redeem, reaffirm or surrender property which secures a consumer debt pursuant to 11 U.S.C. § 521 (a)(2)(A) and perform the election pursuant to 11 U.S.C. § 521(a)(2)(B).[9] *Bank of*

---

[8] Given that Case 1 was commenced prior to October 15, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") is inapplicable.

[9] That statute provides that "within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property as specified by subparagraph (A) of this paragraph;" 11 U.S.C. § 521(a)(2)(B).

*Boston v. Burr (In re Burr)*, 160 F.3d 843, 849 (1st Cir. 1998). Under BAPCPA, there are repercussions if a debtor fails to make the forgoing elections. Under the Bankruptcy Code in effect at the time the Debtors filed Case I, there were no such provisions.

Instead, as reflected in the case law,[10] various remedies have been fashioned to provide a creditor with relief in the event that a debtor failed to exercise one of the options under § 521(a)(2). Contrary to Saugus' assertion in its response to the Debtors' objection to claim, in Case I it concluded that the Statement was insufficient to create a redemption agreement and specifically sought relief from stay based, in part, upon the Debtors' having failed to make an election under § 521. That Saugus thereafter declined to exercise its rights under the security agreement and instead chose to receive periodic payments does not lead to the conclusion that the parties had an informal but enforceable redemption or reaffirmation agreement. In four motions for relief from stay Saugus represented that it knew that there was no redemption agreement. After relief from stay was granted, it failed to pursue its rights. Saugus' contrary assertion in this case cannot remedy this shortcoming.

As further evidence that no redemption agreement existed, Saugus has failed to demonstrate that the other conditions for such an agreement were present. The elements of a redemption agreement are much less rigid than those for a

---

[10]*See, e.g., In re Silvestri*, 294 B.R. 421, 422-3 (Bankr. D. R.I. 2003).

reaffirmation agreement.[11] The statute requires that the proposed redeemed property be property of the estate that has been abandoned or exempted, is personal property intended primarily for personal, family or household use and is subject to a lien for a dischargeable consumer debt.[12] The Debtors did not claim exemptions in the two cars which they originally listed in Case I. The Chapter 7 trustee did not abandon those cars. As for the van, I am skeptical that a vehicle with so many miles and in a household with two other vehicles that enjoy more traditional family use was for personal, family or household use. Therefore, I am dubious that the elements for a redemption agreement could be met. Certainly, the parties never sought approval of any redemption agreement.[13]

Additionally, despite Saugus' representation that redemption by installment may be permitted by consent of the parties, the case upon which it relies for support contains the opposite conclusion.[14] In *Burr*, the First Circuit not only rejected the

---

[11] *Sears, Roebuck & Co. v. Spivey*, 265 B.R. 357, 363 (E.D. N.Y. 2001).

[12] See 11 U.S.C. § 722.

[13] *See* Fed. R. Bankr. P. 6008 ("On motion by the debtor, trustee, or debtor in possession and after hearing on notice as the court may direct, the court may authorize the redemption of property from a lien or from a sale to enforce a lien in accordance with applicable law."). I note that such approval is not necessary for enforcement. *See, e.g., Arruda v. Sears Roebuck & Co.*, 310 F.3d 13, 20 (1st Cir. 2002).

[14] *General Motors Acceptance Corp. v. Bell (In re Bell)*, 700 F.2d 1053, 1058 (6th Cir. 1983) ("The sole method of redemption available to a Chapter 7 debtor under § 722 is a lump-sum redemption."

"fourth option", to which an installment redemption would compare, but also held that any redemption must occur within forty-five days. Therefore, based upon Saugus' representations in the motions for relief from stay in Case I, the lack of elements to establish redemption agreements and the fact that the alleged arrangement was contrary to the law with respect to redemptions in this Circuit, I conclude that no such agreements existed.

The Debtors' actions in Case II do not require a contrary result. Although the Debtors represented in Schedule D in Case II that Saugus continued to hold a claim for the full amount of the loans, Schedule F does not contain any unsecured claims in favor of Saugus. The Debtors have amended their Plan to reflect that they have surrendered the vehicles. Accordingly, these documents in Case II are insufficient to establish that there existed redemption agreements in Case I.

IV. Conclusion

In their objection to claim, the Debtors argued that the unsecured claims of Saugus were discharged in Case I. In that case, Saugus obtained relief from stay, in part, because the Debtors had failed to make elections with respect to how they intended to retain three vehicles. Nothing that Saugus presented in its response to the objection to claim establishes that the Debtors made such an election which would cause any unsecured claims of Saugus to survive the discharge in Case I. The Debtors have overcome their initial burden with respect to their objection and Saugus has not met its ultimate burden of persuasion. Accordingly, I will enter an

order sustaining the objection.

*William C. Hillman*
William C. Hillman
United States Bankruptcy Judge

Dated: 7/20/06